01

02

03

04

05                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
06                                    AT SEATTLE

07  LISA JO HARKNESS,                    )
                                         )     CASE NO. C13-1315-JCC-MAT
08          Plaintiff,                   )
                                         )
09          v.                           )     REPORT AND RECOMMENDATION
                                         )     RE: SOCIAL SECURITY DISABILITY
10  CAROLYN W. COLVIN, Acting            )     APPEAL
    Commissioner of Social Security,     )
11                                       )
            Defendant.                   )
12  _____ )

13          Plaintiff Lisa Jo Harkness proceeds through counsel in her appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15  denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

16  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

17  record (AR), and all memoranda, the Court recommends this matter be AFFIRMED.

18                          **FACTS AND PROCEDURAL HISTORY**

19          Plaintiff was born on XXXX, 1969.[1]   She completed the eleventh grade of high school

20  and previously worked as a caregiver, lawn mower, and guitar player.   (AR 26, 57, 165.)

21  _____

22          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
    Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -1

01    Plaintiff filed an application for SSI in February 2010, alleging disability since August

02    1, 2007.  (AR 144-47.)  Her application was denied initially and on reconsideration, and she

03    timely requested a hearing.

04    ALJ Glenn Meyers held a hearing on February 27, 2012, taking testimony from

05    plaintiff, a vocational expert, and a lay witness.  (AR 32-64.)  On March 6, 2012, the ALJ

06    rendered a decision finding plaintiff not disabled.  (AR 18-27.)  Plaintiff timely appealed.

07    The Appeals Council denied plaintiff's request for review on May 28, 2013 (AR 1-3),

08    making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this

09    final decision of the Commissioner to this Court.

10    **JURISDICTION**

11    The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

12    **DISCUSSION**

13    The Commissioner follows a five-step sequential evaluation process for determining

14    whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

15    must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had

16    not engaged in substantial gainful activity since February 4, 2010, the application date.  *See*

17    Social Security Ruling (SSR) 83-20 (there is no retroactivity of payment for SSI, "payments are

18    prorated for the first month for which eligibility is established after application and after a

19    period of ineligibility.")  At step two, it must be determined whether a claimant suffers from a

20    severe impairment.  The ALJ found plaintiff's hepatitis C, chronic pain, fibrositis condition,

21    major depressive disorder, generalized anxiety disorder, panic disorder, and opiate abuse in

22    remission severe.  Step three asks whether a claimant's impairments meet or equal a listed

REPORT & RECOMMENDATION
PAGE -2

01 impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a

02 listed impairment.

03         If a claimant's impairments do not meet or equal a listing, the Commissioner must

04 assess residual functional capacity (RFC) and determine at step four whether the claimant has

05 demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

06 to perform light work, with the exceptions that she can perform simple repetitive tasks, can

07 have no contact with the public, and can have occasional contact with supervisors and

08 coworkers.   With this RFC, the ALJ found plaintiff unable to perform any past relevant work.

09         If a claimant demonstrates an inability to perform past relevant work, the burden shifts

10 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

11 an adjustment to work that exists in significant levels in the national economy.   With

12 consideration of the Medical-Vocational Guidelines and vocational expert testimony, the ALJ

13 concluded there were jobs existing in significant numbers in the national economy plaintiff

14 could perform, such as work as a production assembler and bottling line attendant.   The ALJ,

15 therefore, concluded plaintiff was not disabled at any time since the application date.

16         This Court's review of the final decision is limited to whether the decision is in

17 accordance with the law and the findings supported by substantial evidence in the record as a

18 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

19 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

20 reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

21 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

22 supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

REPORT & RECOMMENDATION
PAGE -3

01  F.3d 947, 954 (9th Cir. 2002).

02     Plaintiff argues[2] the ALJ erred at step two, erred in the assessment of her RFC given

03  errors in the assessment of her credibility, lay witness testimony, and physicians' opinions, and

04  erred at step five.  She requests remand for an award of benefits or, in the alternative, for

05  further administrative proceedings.   The Commissioner maintains the ALJ's decision has the

06  support of substantial evidence and should be affirmed.

07                                    Step Two

08     At step two, a claimant must make a threshold showing that her medically determinable

09  impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

10  *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

11  activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

12  404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

13  severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

14  effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996

15  (quoting SSR 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of

16  groundless claims."  *Id.* (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to

17  consider the "combined effect" of an individual's impairments in considering severity.  *Id.*

18     A diagnosis alone is not sufficient to establish a severe impairment.   Instead, a claimant

19  ─────────────────────

20     2 Plaintiff's Opening Brief contains a lengthy statement of facts.  (Dkt. 13 at 2-7.)  The Court
    has full access to the administrative record and all the hearing exhibits.  A lengthy summary of the
21  record by either party serves no useful function, and violates this Court's scheduling order. (Dkt. 10 at 2
    ("**The parties shall not include a lengthy recitation of background facts or medical evidence.
    Rather, a discussion of the relevant facts should be included in the context of specific assignments
22  of error.**") (emphasis in original).)   Briefs which violate the Court's scheduling order are subject to
    being stricken.

REPORT & RECOMMENDATION
PAGE -4

must show that her medically determinable impairments are severe.   20 C.F.R. §§ 404.1520(c), 416.920(c).  Also, the failure to list an impairment as severe at step two may be deemed harmless where associated limitations are considered at step four.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff argues the ALJ here erred in failing to include venous insufficiency as a severe impairment.  She points to a diagnosis of this condition upon the observation of "[left] leg swelling and ankle edema[]" by her treating physician, Dr. Jonathan Grymaloski, on September 13, 2010. (AR 308; *accord* AR 374.)  Plaintiff argues her left ankle edema had more than a minimal effect on her ability to work, pointing to the December 2010 opinion of Dr. Grymaloski that she was limited to one hour of standing and two hours of sitting in an eight-hour work day.  (AR 372.)  She denies harmless error given the ALJ's failure to discuss the edema at step four.  However, as argued by the Commissioner, the Court finds no reversible error at step two.

Plaintiff bears the burden at step two.  *Bowen*, 482 U.S. at 146, n.5; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  She must, therefore, present evidence of a medically determinable impairment, through signs, symptoms, and laboratory findings, that has lasted or can be expected to last for a continuous period of not less than twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *accord Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  *See also* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .   which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. §§ 404.1505, 1509 (to meet definition of disability, claimant must

REPORT & RECOMMENDATION
PAGE -5

01  have a severe impairment preventing work; impairment must have lasted or be expected to last

02  at least twelve months).

03       In this case, there is an absence of evidence of venous insufficiency and resulting edema

04  that could be properly considered a severe impairment.   That is, there is little evidence to show

05  this condition significantly limited plaintiff's ability to perform basic work activities or

06  satisfied the twelve-month durational requirement.

07       Indeed, the medical evidence relating to this impairment is minimal and limited to a

08  one-month period.   For example, on the day of the diagnosis, September 13, 2010, Dr.

09  Grymaloski prescribed over-the-counter Motrin as treatment.   (AR 308.)   On the following

10  day, plaintiff reported her pain at zero out of ten on the pain scale and Dr. Grymaloski described

11  only "mild to [moderate] ankle edema" and advised plaintiff to "elevate, consider [support]

12  stockings/hose."   (AR 305.)   On September 20, 2010, Dr. Grymaloski indicated he reviewed a

13  leg ultrasound finding of venous insufficiency and found "no clot."   (AR 303.)   As described

14  by the Commissioner, this condition was thereafter relegated to a long list of plaintiff's

15  "problems" dating back to 2008 and including, for example, urinary tract and respiratory

16  infections occurring in early 2009.   (*See* AR 374-75.)   The only opinion evidence from Dr.

17  Grymaloski dated after the initial diagnosis makes no mention of the condition.   (AR 372-33

18  (mentioning only opiate dependence treatment, fibrositis, and arthritis).)

19       Moreover, the ALJ did consider plaintiff's testimony that "her ankles swell to the size of

20  a football at least once a week[,]" as well as her testimony and other evidence bearing on her

21  other physical impairments, including her severe chronic pain and fibrositis.   (AR 23, 25.)   He

22  also considered Dr. Grymaloski's opinions as to limitations on plaintiff's ability to sit and walk.

REPORT & RECOMMENDATION
PAGE -6

01   (AR 25.)   As discussed below, the Court finds no error in those assessments.

02        As a general principle, an ALJ's error may be deemed harmless where it is

03   "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115.

04   The Court looks to "the record as a whole to determine whether the error alters the outcome of

05   the case." *Id.*   In this case, the Court concludes that, even assuming error in the ALJ's failure

06   to consider or deem severe plaintiff's venous insufficiency and resulting edema at step two,

07   such error is properly deemed harmless for the reasons set forth above.

08                                   <u>Credibility</u>

09        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

10   reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

11   (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). *See also Vertigan v. Halter*,

12   260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

13   identify what testimony is not credible and what evidence undermines the claimant's

14   complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).   "In weighing a claimant's

15   credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

16   testimony or between his testimony and his conduct, his daily activities, his work record, and

17   testimony from physicians and third parties concerning the nature, severity, and effect of the

18   symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

19   1997).

20        In this case, the ALJ found that, while plaintiff's medically determinable impairments

21   could reasonably be expected to cause some of the alleged symptoms, her statements

22   concerning the intensity, persistence, and limiting effects of those symptoms were not credible

REPORT & RECOMMENDATION
PAGE -7

01 to the extent inconsistent with the RFC assessed.   For the reasons described below, the Court

02 disagrees with plaintiff's contention that the ALJ committed reversible error in the

03 consideration of plaintiff's credibility.

04 A.   Objective Evidence

05        The ALJ contrasted plaintiff's allegations of disabling symptoms of pain with physical

06 examination findings that were "generally mild or within normal limits."   (AR 23.)   "While

07 subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

08 by objective medical evidence, the medical evidence is still a relevant factor in determining the

09 severity of the claimant's pain and its disabling effects."   *Rollins v. Massanari*, 261 F.3d 853,

10 857 (9th Cir. 2001); SSR 96-7p.   In this case, the ALJ appropriately pointed to generally mild

11 or normal findings on numerous physical examinations in 2010 and 2011.   (AR 23.)

12 Plaintiff's reference to the observation of leg swelling and edema on two consecutive days in

13 September 2010 does not persuasively counter the substantial evidence support identified for

14 the ALJ's decision.

15        The ALJ also found plaintiff's mental status examination findings to support only mild

16 to moderate limitations.   (AR 24.)   He noted her ability, in April 2010, to recall three out of

17 four objects after fifteen minutes, spell "world" forward and backward, to abstract proverbs,

18 and that she had adequate fund of information.   (*Id.*)   He also noted that, in December 2011,

19 she was fully oriented, had normal range and presentation of thought, organized and clear

20 stream of mental activity, good long-term memory, and was able to name the current president,

21 but "refused to try to perform serial seven subtractions because she reported she was always bad

22 with math."   (*Id.*)

REPORT & RECOMMENDATION
PAGE -8

01        Plaintiff notes the ALJ left out the fact that, in April 2010, she was not able to do serial

02    sevens, digit span, and retention (AR 262), and, in December 2011, was unable to name the

03    current governor (AR 379).   However, she fails to demonstrate the ALJ's interpretation of the

04    evidence as a whole was not rational.   *See Morgan v. Commissioner of the SSA*, 169 F.3d 595,

05    599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation,

06    it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041

07    (9th Cir. 1995)).   Plaintiff also avers a lack of specificity as to which allegations or symptoms

08    the ALJ found inconsistent with the examination findings identified.   However, reading the

09    ALJ's decision as a whole, including his description of plaintiff's testimony of her symptoms

10    and the medical evidence of record, the Court has no difficulty in understanding the ALJ's

11    reasoning.   *See Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our

12    faculties for drawing specific and legitimate inferences from the ALJ's opinion.")

13    B.   <u>Daily Activities</u>

14        The ALJ found plaintiff's physical activities of daily living inconsistent with disability.

15    (AR 23.)   He contrasted her testimony as to problems getting out of the shower and dressing

16    with her failure to report any such problems in a 2010 function report, and noted her reports that

17    she prepared meals, did dishes, and cooks, walked her dog three times a day, did ceramics,

18    visited her children daily, and "went to the West coast once per week."   (AR 23.)   Plaintiff

19    persuasively argues the inaccuracy of the latter observation, given that the evidence apparently

20    relied upon by the ALJ reflects plaintiff's report she went to "West Coast Counseling" once a

21    week.   (AR 261.)   However, this error can be deemed harmless given the other activities

22    identified, as well as other reasons provided for the credibility assessment.   *See Carmickle v.*

01   *Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error can be deemed

02   harmless where other, valid reasons provided).   That is, the ALJ here reasonably pointed to

03   evidence of a number of activities as inconsistent with the alleged degree of physical

04   impairment.   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d at

05   958-59.   Also, contrary to plaintiff's contention, the ALJ's decision read as a whole provides

06   sufficient specification as to the basis for his conclusion.   *See Magallanes*, 881 F.2d at 755.

07       The ALJ also reasonably found plaintiff's mental activities of daily living inconsistent

08   with disability.   *Tonapetyan*, 242 F.3d at 1148; *Thomas*, 278 F.3d at 958-59.   He pointed to

09   plaintiff's report in January 2010 that she went out daily, was able to go out alone, shopped in

10   stores, did ceramics, spent time with others, had no problems paying attention, and could follow

11   written and spoken instructions well.   (AR 24.)   He also noted plaintiff's April 2010 report

12   that she attended AA meetings and visited with her children daily.   (*Id.*)   Plaintiff avers error

13   in the ALJ's reliance on evidence from early 2010, noting the considerable period of time up to

14   the date of the February 2012 hearing.   However, plaintiff does not point to evidence from a

15   later date undermining the ALJ's conclusion.   Also, while clarifying she reported shopping

16   only twice monthly for one hour (AR 154), plaintiff fails to demonstrate the ALJ's

17   consideration of this and other evidence was not rational.   *Morgan*, 169 F.3d at 599.

18   C.    <u>Inconsistencies in Reporting</u>

19       The ALJ proceeded to consider inconsistency in plaintiff's reporting with regard to her

20   mental health symptoms.   (AR 24.)   He noted instances in which plaintiff failed to provide

21   complete or accurate information regarding her prior drug problems to two different physicians,

22   and inconsistent reporting regarding past suicide attempts and hospitalizations.   (*Id.*)   "One

REPORT & RECOMMENDATION
PAGE -10

01 strong indication of the credibility of an individual's statements is their consistency, both

02 internally and with other information in the case record."   SSR 96-7p.   In this case, the ALJ

03 properly considered evidence of inconsistencies in reporting as a general matter, and as related

04 to drug use.   *See Light*, 119 F.3d at 792 (inconsistencies properly considered), and *Thomas*,

05 278 F.3d at 959 (evidence of lack of candor regarding drug and alcohol usage supported ALJ's

06 negative conclusions about claimant's veracity).   For this reason, and for all of the reasons set

07 forth above, plaintiff fails to demonstrate reversible error in the ALJ's credibility assessment.

08                                                   Physicians' Opinions

09          In general, more weight should be given to the opinion of a treating physician than to a

10 non-treating physician, and more weight to the opinion of an examining physician than to a

11 non-examining physician.   *Lester*, 81 F.3d at 830.   Where not contradicted by another

12 physician, a treating or examining physician's opinion may be rejected only for "'clear and

13 convincing'" reasons.   *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

14 Where contradicted, a treating or examining physician's opinion may not be rejected without

15 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

16 *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

17          In this case, plaintiff argues error in the ALJ's consideration of opinion evidence from

18 treating physician Dr. Grymaloski, examining psychologists Dr. Anselm Parlatore and Dr.

19 Ellen Walker Lind, and non-examining physician Dr. Robert Hoskins and non-examining

20 psychologist Dr. John Robinson.

21 A.       Dr. Jonathan Grymaloski and Dr. Robert Hoskins

22          The ALJ gave little weight to opinion evidence from Dr. Grymaloski dated in July and

REPORT & RECOMMENDATION
PAGE -11

01   December 2009, and finding plaintiff limited in her ability to balance, bend, climb, crouch,

02   handle, pull, push, reach, sit, and stop, and severely limited in her ability to work.   (AR 25

03   (citing AR 248-53).)   He also addressed December 2010 opinion evidence from this physician

04   finding plaintiff limited to standing for one hour and sitting for two hours in an eight-hour day,

05   limited to lifting twenty pounds occasionally and five pounds frequently, unable to bend, stoop,

06   push, pull, crawl, or lift frequently, unable to stand or sit for prolonged periods, and needing to

07   avoid extreme hot and cold.   (*Id.* (citing AR 372-73).)   The ALJ provided several reasons for

08   rejecting these opinions, including that Dr. Grymaloski cited "little to no basis for his

09   opinions[,]" that he appeared to rely primarily on plaintiff's self-reports, "which are unreliable

10   at times[,]" and given the "minimal objective evidence relating to physical problems and

11   physical exam findings are generally mild."   (*Id.*)

12           The ALJ gave significant weight to the September 2010 opinion of State agency

13   consultant Dr. Hoskins, who found plaintiff could lift twenty pounds occasionally and ten

14   pounds frequently, could stand and/or walk and could sit six hours in an eight-hour day, could

15   push and pull except as shown for lifting and carrying, could occasionally climb ramps and

16   stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or

17   scaffolds.   (*Id.* (citing AR 296 and AR 283-90).)   The ALJ noted Dr. Hoskins had the

18   opportunity to review the record and found his opinions mostly consistent with the record, but

19   did not accept the postural limitations given the minimal supporting objective evidence.   (*Id.*)

20           In arguing error, plaintiff points to the diagnosis of Hepatitis C by Dr. Grymaloski, as

21   objectively confirmed by blood tests (AR 349), and of venous insufficiency based on objective

22   evidence of edema.   She notes that Dr. Grymaloski treated her on a regular basis and that his

REPORT & RECOMMENDATION
PAGE -12

01   assigned postural limitations were supported by Dr. Hoskins.   She also notes that both

02   physicians were aware of her Hepatitis C, which is known to cause symptoms of joint pain, and

03   that Dr. Hoskins assessed her prior to her development of her left ankle edema.

04          "The ALJ need not accept the opinion of any physician, including a treating physician,

05   if that opinion is brief, conclusory, and inadequately supported by clinical findings."   *Thomas*,

06   278 F.3d at 957.   *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

07   (inconsistency with the record properly considered by ALJ in rejection of physician's

08   opinions).   "An ALJ may [also] reject a treating [or examining] physician's opinion if it is

09   based 'to a large extent' on a claimant's self-reports that have been properly discounted as

10   incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602).   Further, the

11   ALJ is responsible for resolving conflicts in the medical record, *Carmickle*, 533 F.3d at 1164,

12   and when evidence reasonably supports either confirming or reversing the ALJ's decision, the

13   Court may not substitute its judgment for that of the ALJ,   *Tackett v. Apfel*, 180 F.3d 1094,

14   1098 (9th Cir. 1999).

15          In this case, evidence of an isolated incident of left ankle edema fails to support error in

16   the ALJ's assessment of the evidence from Drs. Grymaloski and Hoskins.   Nor does the mere

17   fact of the Hepatitis C diagnosis demonstrate error.   The ALJ had earlier noted that the medical

18   evidence of plaintiff's physical impairments were "rather remote in time, 2009[,]" and that,

19   while "there is no clear evidence of fibromyalgia merely conclusions," he gave plaintiff "the

20   benefit of the doubt" in considering her joint complaints.   (AR 20.)   He also, as discussed

21   above, reasonably assessed the findings on physical examination as generally mild or within

22   normal limits.   (AR 23.)

REPORT & RECOMMENDATION
PAGE -13

01          The ALJ here reasonably rejected the opinions of Dr. Grymaloski, and the postural

02   limitations assessed by Dr. Hoskins, based on the minimal supporting objective evidence.   The

03   ALJ further reasonably construed the opinion evidence from Dr. Grymaloski as containing little

04   basis for his opinions and appearing to reflect primary reliance on plaintiff's self-reports, which

05   the ALJ properly found not fully credible.   Plaintiff, as such, fails to demonstrate any error in

06   the ALJ's consideration of the opinion evidence from Dr. Grymaloski or Dr. Hoskins.

07   B.      Dr. Anselm Parlatore and Dr. Ellen Walker Lind

08          The ALJ gave little weight to a Global Assessment of Functioning (GAF) score of 50

09   assigned by Dr. Parlatore in April 2010.  (AR 25, 260-63.)   *See* Diagnostic and Statistical

10   Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR) (GAF of 41 to 50 describes

11   "serious symptoms" or "any serious impairment in social, occupational, or school

12   functioning").   He noted that Dr. Parlatore offered no opinion as to plaintiff's mental

13   limitations, relied in part on her self-report, and that plaintiff misrepresented her drug addiction

14   history to this physician, which "undermines the reliability of the assessment."   (AR 25.)

15          The ALJ also gave little weight to the December 2011 opinion of Dr. Lind that plaintiff

16   had significant symptoms that would interfere with her ability to work.  (AR 25, 377-79.)  He

17   found Dr. Lind relied primarily on plaintiff's self-reports, which are not credible at times,

18   noting plaintiff's report of a past suicide attempt and psychiatric hospitalization, which she

19   denied previously, as well as the mild to moderate findings on mental status examination.  (AR

20   25.)

21          None of plaintiff's arguments (*see* Dkt. 13 at 16-18 and Dkt. 15 at 4-5) demonstrate

22   error in the ALJ's decision.   The ALJ properly rejected the opinion evidence from Drs.

REPORT & RECOMMENDATION
PAGE -14

01 Parlatore and Lind based on a reasonable determination that they primarily relied on plaintiff's

02 self-reports, which the ALJ properly discounted as incredible.   *Tommasetti*, 533 F.3d at 1041.

03 Indeed, Dr. Parlatore did not review medical records and received inaccurate information from

04 plaintiff as to her history of illicit drug use.  (AR 260-62.)   Nor does plaintiff refute the

05 inconsistency in reporting to Dr. Lind, or otherwise provide support for the contention that an

06 ALJ improperly considers misrepresentation of information or inconsistent reporting of

07 information in the assessment of opinion evidence.  To the contrary, such consideration is

08 entirely appropriate.  *See Tommasetti*, 533 F.3d at 1041.

09       The ALJ also properly noted Dr. Parlatore's failure to assess any limitations.  *See*, *e.g.*,

10 *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ not required

11 to provide clear and convincing reasons to reject physician's statement when statement did not

12 assess any limitations).   Further, the ALJ had previously, and reasonably, assessed the mental

13 status examination (MSE) results from both Dr. Parlatore and Dr. Lind to support only mild to

14 moderate limitations.   (AR 24, 262 (plaintiff remembered three out of four objects after fifteen

15 minutes, she was "too anxious and jittery and nervous" to do serial sevens, was able to spell

16 world forward and backward, was "too anxious and nervous" to do digit span and retention, was

17 able to abstract proverbs, and had adequate fund of information), and 379 (very cooperative,

18 able to articulate herself well, normal range and presentation of thought, organized and clear

19 stream of mental activity, fully oriented, good long-term memory, while forgetful in daily life,

20 able to name current president, but not governor, unwilling to try serial threes because "she's

21 always been bad with math[,]" and apparently adequate performance on abstract thinking and

22 insight and judgment).)  As such, the ALJ's rejection of Dr. Parlatore's GAF score and of Dr.

01   Lind's opinion has the support of substantial evidence.  *See generally Vargas v. Lambert*, 159

02   F.3d 1161, 1164 n.2 (9th Cir. 1998) (the GAF score is a "rough estimate" of an individual's

03   psychological, social and occupational functioning, and is used to assess the need for

04   treatment"), and *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any

05   physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

06   supported by clinical findings.").

07   C.      Dr. John Robinson

08          Plaintiff assigns error to the ALJ's assessment of opinion evidence from Dr. Robinson,

09   but provides no supporting argument.  The Court, as such, need not address the ALJ's

10   consideration of this opinion evidence.  *See Indep. Towers of Wash. v. Washington*, 350 F.3d

11   925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments:

12   "We require contentions to be accompanied by reasons.")   However, the undersigned

13   nonetheless observes that the ALJ provided sufficient reasons, supported by substantial

14   evidence, for assigning some weight to the opinion evidence from this non-examining

15   physician.  (*See* AR 25, 281.)

16          The ALJ agreed with Dr. Robinson that plaintiff could perform simple repetitive tasks,

17   and found plaintiff more limited than assessed by this physician with respect to social abilities,

18   assigning a limitation to occasional contact with supervisors and coworkers and no contact with

19   the public.  (AR 22, 281.)  Also, given the evidence of plaintiff's refusal to perform certain

20   testing and the mild to moderate MSE findings described above, the ALJ reasonably rejected

21   the assessed limitation to "two-hour persistence."  (AR 26, 281.)  *See Tommasetti*, 533 F.3d at

22   1041 (inconsistency with the record properly considered in rejection of physician's opinion),

REPORT & RECOMMENDATION
PAGE -16

01 and *Thomas*, 278 F.3d at 959 (self-limiting behavior on testing properly considered in relation

02 to credibility).   *See also* SSR 96-9p (describing eight-hour work day as including "a morning

03 break, a lunch period, and an afternoon break at approximately 2-hour intervals ").   The ALJ,

04 as such, also properly considered the opinion evidence from Dr. Robinson.

05                                               Lay Testimony

06          Plaintiff asserts error in the consideration of the lay testimony from her mother, Loretta

07 Harkness.   The ALJ found the report and testimony of Ms. Harkness inconsistent with the

08 record, stating that physical examination findings and MSE's "consistently support mostly mild

09 to moderate limitations."   (AR 24.)   The ALJ, however, gave more weight to the lay witness

10 report as to plaintiff's activities of daily living – including an absence of problems with

11 personal care, ability to prepare meals, perform light housekeeping, go out up to twice daily and

12 alone, and to shop in stores, watch television, and play the guitar – finding it consistent with the

13 record.   (AR 24-25.)

14          Plaintiff argues error in the ALJ's failure "to state which statements were inconsistent."

15 (Dkt. 13 at 18.)   However, the Court encounters no difficulty in discerning the basis for the

16 ALJ's decision given his lengthy description of the testimony from Ms. Harkness and upon

17 review of the decision as a whole.   *See Magallanes*, 881 F.2d at 755.   Moreover, the ALJ need

18 only provide germane reasons for rejecting the testimony of a lay witness, *Smolen*, 80 F.3d at

19 1288-89, and, in this case, the ALJ provided a reason germane to Ms. Harkness and supported

20 by substantial evidence.

21                                               Step Five

22          Plaintiff argues error at step five given the failure to include the limitations assessed by

REPORT & RECOMMENDATION
PAGE -17

01  his treating physician into the hypothetical proffered to the vocational expert (VE), and arising

02  from other errors in the preceding steps of the sequential evaluation process.   However,

03  because the Court finds no error in the assessment of the medical evidence, plaintiff's

04  credibility, or the lay testimony and, therefore, the assessed RFC and corresponding

05  hypothetical to the VE, this restating of plaintiff's argument fails to establish error at step five.

06  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

07                                       <u>CONCLUSION</u>

08          For the reasons set forth above, this matter should be AFFIRMED.

09          DATED this <u>7th</u> day of February, 2014.

10

11

12                                              Mary Alice Theiler
                                                Chief United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

REPORT & RECOMMENDATION
PAGE -18